UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNA BRUNS,

    Plaintiff,

v.                          Case No. 8:17-cv-2866-T-CPT

ANDREW M. SAUL,
Commissioner of
Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments. For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1965, has a high school education, and has past relevant work experience as a cashier, store stocker, and customer service clerk. (R. 24-25). In June 2014, the Plaintiff applied for DIB and SSI, alleging disability as of

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit.

June 5, 2014, due to anxiety, asthma, a herniated esophagus, degenerative disc disease, disc bulges, carotid artery stenosis, carpal tunnel syndrome in both wrists, high blood pressure, high cholesterol, and chronic obstructive pulmonary disease (COPD). (R. 116, 203-04). The Social Security Administration denied her applications both initially and on reconsideration. (R. 100-01, 130-31).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on October 5, 2016. (R. 32-56). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. (R. 36-51). A vocational expert (VE) also testified. (R. 51-55).

In a decision dated January 5, 2017, the ALJ found that the Plaintiff: (1) met the insured status through December 31, 2018, and had not engaged in substantial gainful activity since her alleged onset date of June 5, 2014; (2) had the severe impairments of COPD, osteoarthritis, seizures, and degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work, subject to certain exertional and environmental limitations; and (5) based in part on the VE's testimony, could not perform her past relevant work but was capable of performing other work that exists in significant numbers in the national economy—namely, the unskilled jobs of mailroom clerk, merchandise maker, and survey worker. (R. 17-26). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 26).

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a); 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); 20 C.F.R. § 416.920(a)(4).[3] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given her RFC, age,

---

[2] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

education, and work experience. *Carter*, 726 F. App'x at 739 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether he applied the correct legal standards. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405

4

F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While the court accords deference to the Commissioner's factual findings, "no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff argues on appeal that the ALJ did not properly evaluate the severity of her mental impairments. (Doc. 27 at 6). In support of this contention, the Plaintiff asserts that the ALJ failed to state the weight he accorded the opinions of a consultative psychologist, Dr. Angel Martinez, and neglected to acknowledge the medical records from the Plaintiff's treating psychiatrist, Dr. Bharminder Bedi. *Id.* at 6-11. As a result, the Plaintiff requests that the Court remand the matter to the Commissioner for a "fuller and more adequate evaluation and development" of the evidence relating to her mental health condition. *Id*. at 19.

The Commissioner counters that the Plaintiff failed to meet her burden of showing a severe mental impairment that interfered with her ability to perform basic work activities. *Id.* at 13. The Commissioner further argues that any error by the ALJ in failing to explicitly assign the weight he gave to Dr. Martinez's opinions or to discuss Dr. Bedi's records is harmless because such opinions and records are consistent with the ALJ's conclusions regarding the Plaintiff's mental limitations. *Id.* at 16-19.

Upon a thorough review of the record and the parties' submissions, the Court finds no reversible error. For the purposes of its analysis, the Court addresses the Plaintiff's argument in three parts: (a) the ALJ's assessment of the Plaintiff's mental

5

impairments as non-severe; (b) the ALJ's consideration of Dr. Martinez's medical opinions; and (c) the ALJ's evaluation (or lack thereof) of Dr. Bedi's treatment records.

A.
*Severity of the Plaintiff's Mental Impairments*

At step two of the sequential evaluation process, the ALJ must gauge whether the claimant has a medically determinable impairment (or combination of impairments) that is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4). This step in the disability evaluation process is a "threshold inquiry," under which "only the most trivial impairments are to be rejected." *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). The severity of an impairment is "measured in terms of its effect upon [the] ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). As a result, an impairment is considered severe only if it significantly limits a claimant's physical or mental abilities to engage in basic work activities. 20 C.F.R. §§ 404.1520, 404.1521(a), 416.920, 416.921(a); *Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987)). A non-severe impairment, on the other hand, is one that does not result in such a limitation. 20 C.F.R. §§ 404.1522, 416.922.

When a claimant presents a "colorable" claim of a mental impairment, the ALJ must apply the Psychiatric Review Technique (PRT) mandated by the Regulations. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. §§ 404.1520a, 416.920a. This technique requires an assessment regarding how the claimant's mental impairments affect four

broad functional areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, and pace, and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the Commissioner rates "the degree of functional limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area," then the decisionmaker will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* at §§ 404.1520a(d)(1), 416.920a(d)(1). The Regulations also require that the ALJ provide a specific explanation for his opinion, including the degree of limitation found in the four broad functional areas. *Id.* at §§ 404.1520a(c)(4), 416.920a(c)(4).

In this case, the ALJ determined at step two that the Plaintiff's anxiety caused no more than a minimal limitation on her ability to perform mental work activities. (R. 18). In arriving at this conclusion, the ALJ properly incorporated pertinent findings and conclusions based on the application of the PRT, including the degree of limitation for each of the four functional areas. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). In doing so, the ALJ relied upon the Plaintiff's Adult Function Report, in which the Plaintiff indicated that "she is independent for all self-care activities, performs a variety of daily activities, interacts with other on a regular basis and engages in purposeful activity when she is motivated to do so." (R. 18); *see also* (R. 240-47).

7

The ALJ also relied upon the consultative examination report from Dr. Martinez. *Id.* (citing R. 846-52). In that report, as noted by the ALJ, Dr. Martinez concluded that that the Plaintiff "was capable of initiating and participating in activities of daily living without the need for supervision or directions," "was able to understand and memorize short simple instructions without any difficulties," "showed good understanding of proper social interactions and exchanges," "demonstrated . . . cognitive abilities to be within the below average range," and "ha[d] the capacity to show good reasoning, judgment and insight." (R. 851).

Based on this information, the ALJ found at step two that, because the Plaintiff's medically determinable impairments caused no more than mild limitations in the first three functional areas and no episodes of decompensation, her mental impairments were non-severe. (R. 18) (citing 20 C.F.R §§ 404.1520a(d)(1), 416.920a(d)(1)).

The ALJ went on to acknowledge that the PRT assessment is not the same as a mental RFC assessment at step four and five (which, he stated, requires a "more detailed assessment" of the functional import of a claimant's mental impairments), and noted that he had incorporated the mental function analysis into his RFC analysis. (R. 18-19). In subsequently making his RFC finding, the ALJ made clear that he considered the entire record in accordance with the regulatory standards. (R. 19). Ultimately, however, the ALJ found no mental limitations at step four, relying in large part on the Plaintiff's reported activities of daily living and the opinion of a state agency psychological consultant, Dr. B. Lee Hudson. (R. 19, 24). Such a determination is

supported by substantial evidence, and as more fully discussed in sections B and C, *infra*, the Plaintiff fails to show the ALJ erred in finding that her mental impairments were non-severe or that she did not require any additional restrictions in her RFC.

B.
*Dr. Martinez's Opinion*

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[4] "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)).

If a medical source's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that opinion and the reasons therefor. *Id.* at 1179. Failure to state the weight accorded a medical opinion with "at least some measure of clarity" constitutes grounds for reversal. *Id.* at 1179 (internal quotation marks omitted).

---

[4] Although this regulation has been amended effective March 27, 2017, the new regulation only applies to applications filed on or after that date. 20 C.F.R. § 404.1520c. Because the Plaintiff's application was filed in June 2014, the older version of the regulation applies here.

9

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford*, 363 F.3d at 1159. However, the opinion of a one-time examining doctor—such as a doctor who performs a consultative examination—merits no such deference. *Id.* at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

As alluded to above, the Plaintiff argues the ALJ: (1) failed to identify the weight he attributed to Dr. Martinez's opinion that the Plaintiff "was able to understand and memorize short simple instructions without any difficulties" (R. 851); and (2) erred in not including a restriction in the RFC to account for this limitation. Both of these arguments are unpersuasive.

While the Plaintiff is correct that the ALJ did not state with particularity the weight he gave to Dr. Martinez's opinion, it is evident for the reasons outlined above that the ALJ relied upon Dr. Martinez's opinions in assessing the Plaintiff's mental limitations. The ALJ summarized and discussed these opinions and, by the Court's read, fully credited them in his step-two finding—even though he did not specifically state that he was affording the opinions significant weight. *See* (R. 18).

As to the Plaintiff's second contention, the mere fact Dr. Martinez found that the Plaintiff "was able to understand and memorize short simple instructions without any difficulties" (R. 851) does not mean he believed she was unable to perform more detailed tasks. Dr. Martinez's report contains no such assessment, and, contrary to the Plaintiff's assertions, the ALJ was not obliged to infer that the doctor held such an opinion.

Indeed, if anything, the whole of Dr. Martinez's report and his conclusion that the Plaintiff was capable of working despite her limitations suggests he took the opposite view. *See* (R. 851-52). Dr. Martinez determined, for example, that the Plaintiff had no difficulties concentrating or "attending," and that she did not appear to have a serious mental health condition that would interfere with her ability to function in work-like situations. (R. 851).

The fact that Dr. Martinez's opinion regarding the Plaintiff's ability to work is consistent with that of the state agency psychological consultant Dr. Hudson (R. 108-10) further undermines the Plaintiff's argument. Dr. Hudson, whose opinions the ALJ afforded great weight (R. 24), likewise concluded that the Plaintiff had "no significant limitations in day-to-day functioning" from a mental health perspective. (R. 110).

In any event, even if the ALJ erred in not explicitly assigning weight to Dr. Martinez's opinion, any such error was harmless. *See Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that an error is harmless when it does not prejudice a claimant)); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to discuss the weight given to a physician's opinion constituted harmless error when the opinion did not contradict the ALJ's ultimate finding and was substantially similar to that of another doctor whose opinion was given substantial weight); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error where the ALJ failed to explicitly state what weight he afforded to a number of physicians' medical opinions where none of those opinions directly contradicted the ALJ's

findings). As the Commissioner asserts in this regard (Doc. 27 at 18), a limitation to "short, simple instructions" is consistent with the ALJ's finding that the Plaintiff could perform the unskilled jobs of mailroom clerk, merchandise maker, and survey worker. 20 C.F.R. §§ 404.1568(a), 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); *Burgos v. Acting Comm'r of Soc. Sec.*, 705 F. App'x 794, 803 (11th Cir. 2017) (acknowledging that a significantly-affected but not precluded ability to remember one- or two-step instructions and make simple work related decisions suggests that the claimant could perform unskilled work); *Clinton v. Astrue*, 298 F. App'x 855, 857 (11th Cir. 2008) (finding a limitation to "simple two step instructions" consistent with unskilled work).

## C.
### *Dr. Bedi's Treatment Records*

To further support her claims that her mental impairments were more severe than as assessed, the Plaintiff also cites to the treatment records of her psychiatrist, Dr. Bedi. The Plaintiff visited Dr. Bedi on four occasions between August 20, 2015, and June 28, 2016. (R. 1097-1103). The parties agree that Dr. Bedi's notes indicate that, on her initial evaluation, the Plaintiff demonstrated moderate anxiety, normal motor behavior, coherent speech and thought content, and the absence of any delusions or hallucinations. (R. 1102).[5] At that first appointment, Dr. Bedi diagnosed the Plaintiff

---

[5] Because Dr. Bedi's notes are nearly illegible, the Court accepts the parties' summary of these notes in their statement of facts in their joint memorandum. (Doc. 27 at 6-7).

as having social anxiety, assigned her a global assessment of functioning (GAF) score of 45-50, and prescribed her medication. (R. 1103).

At a follow-up appointment in April 2016, Dr. Bedi changed the Plaintiff's medication but found her appearance, motor behavior, mood, affect, speech, thought content, orientation, and cognitive function to be within normal limits. (R. 1099). Dr. Bedi also assessed the Plaintiff with a GAF score of 50-60. (R. 1099). The next month, Dr. Bedi assessed the Plaintiff with the same GAF score and again found her mental status examination normal. (R. 1098). His mental status examination of the Plaintiff at her third appointment in 2016 was similarly normal. (R. 1097).

The Plaintiff now claims that the ALJ erred in failing to mention Dr. Bedi's notes, particularly his diagnosis that the Plaintiff had social anxiety disorder and GAF scores indicating serious to moderate symptoms.[6]

While the Plaintiff is correct that the ALJ did not address or otherwise mention Dr. Bedi's treatment records, this does not constitute error. As noted above, when considering a treating doctor's opinions, an ALJ must ordinarily give such opinions substantial or considerable weight unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.

---

[6] As the Plaintiff observes in her memorandum, a GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) *or* moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers), while a GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV).

1997)); *Crawford*, 363 F.3d at 1159. As the Plaintiff implicitly acknowledges, however, Dr. Bedi's notes do not contain any specific "medical opinions" that the ALJ was required to explicitly weigh. *See Winschel*, 631 F.3d at 1178-79.

Furthermore, contrary to the Plaintiff's suggestion, the ALJ did not have a duty to discuss the discrete entries or diagnoses contained within Dr. Bedi's notes. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."). It is well established in this regard that the mere diagnosis of a mental condition or evidence that a claimant has been treated with medication are insufficient to demonstrate the severity or functional impacts of a claimant's alleged impairments. *Moore*, 405 F.3d at 1211 n.6 (citation omitted) (distinguishing existence of plaintiff's leg and shoulder impairments from more salient issue of their impact on plaintiff's ability to work); *McCruter*, 791 F.2d at 1547. Instead, as noted above, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon [the] ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter*, 791 F.2d at 1547. Dr. Bedi's mere diagnosis of social anxiety disorder provides no evidence of functional import or work-related limitation(s) resulting from such anxiety that the ALJ was duty-bound to address.

The ALJ's failure to discuss the GAF scores assigned by Dr. Bedi likewise does not require remand. A GAF score indicates a clinician's subjective assessment of an individual's overall functioning but does not itself either reveal a particular type of limitation or constitute an assessment of a claimant's ability to work. *Thornton v.*

*Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015). As such, the Commissioner does not endorse the use of the GAF scale in disability determinations and has indicated that GAF scores bear no direct correlation to the requirements of the listings for mental disorders. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th Cir. 2015) (citation omitted) (noting that the Commissioner has concluded that the GAF scale does not have a direct correlation to the severity requirements in the mental disorders listings); *Thornton*, 597 F. App'x at 613 (same); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). And, significantly, the American Psychiatric Association did not include the GAF scale in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM). *See* DSM-5 at 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). For this reason, many courts in this district recognize that GAF scores are of "questionable value in determining an individual's mental functional capacity" and generally decline to order remand when an ALJ fails to discuss such scores. *Braid v. Comm'r of Soc. Sec.*, 2014 WL 1047377, at *5 (M.D. Fla. Mar. 18, 2014) (collecting cases).[7]

---

[7] The Court acknowledges that there is some authority that an ALJ should state the weight afforded to GAF scores in the record in certain circumstances. *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006). Unlike the case here, however, *McCloud* concerned a situation where the ALJ mistakenly stated that a GAF score of 41-50 was reflective of moderate (not severe) symptoms and relied on that mistaken belief to support his findings. *Id.*

15

In this case, although the ALJ did not specifically analyze the GAF scores, he examined the Plaintiff's alleged mental impairments and explained why they did not result in any work-related limitation(s). A review of the record, as discussed herein, reveals that the ALJ properly considered Plaintiff's alleged mental impairments and found them to be non-severe. The GAF scores offered by Dr. Bedi do not indicate to the contrary. These scores are unaccompanied by any narrative or justification, do not indicate any specific mental functional limitations, and do not equate to an assessment of the Plaintiff's ability to work. Indeed, Dr. Bedi's notes provide little to no insight into his assessment of the severity or import of the Plaintiff's mental health condition. And, the Plaintiff does not demonstrate any limitations reflected by Dr. Bedi's treatment records for which the ALJ did not account. As such, the Court finds no reversible error in the ALJ's decision not to expressly address either the GAF scores or Dr. Bedi's treatment records in general.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

DONE and ORDERED in Tampa, Florida, this 16th day of August 2019.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record